**Frank MARS, Petitioner–Appellee,**

v.

**The Honorable Marvin U. MOUNTS, et al., Respondents–Appellants.**

**No. 88–6115.**

United States Court of Appeals,
Eleventh Circuit.

March 8, 1990.

---

Consiglia A. Terenzio, Sylvia H. Alonso, West Palm Beach, Fla., for respondents-appellants.

Margaret Good, Public Defender, Steven Malone, West Palm Beach, Fla., for petitioner-appellee.

Before HATCHETT and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The state of Florida, the appellant, appeals the district court's grant of the writ of habeas corpus holding that double jeopardy bars the state from putting the appellee on trial for second-degree murder after his acquittal for first-degree murder of the same victim, where the only difference in the charges is the hour the crime allegedly occurred. We affirm.

### FACTS

On March 15, 1983, a grand jury indicted Frank Mars, the appellee, for the first-degree murder of Willie Berry. The indictment alleged that the murder occurred "on or about" January 30, 1983. Although Mars did not demand a bill of particulars from the state, the state filed a document entitled "Statement of Particulars, Answer to Demand for Discovery, Demand for Reciprocal Discovery, Demand for Notice Al-

ibi." [1]  The bill of particulars alleged that Mars committed the crime between "5 o'clock P.M. January 29, 1983 and 12:59 A.M. January 30, 1983." At trial, however, the evidence tended to show that the murder was committed after 12:59 a.m., January 30, 1983. Although neither party requested a jury instruction including the language in the bill of particulars, the trial court, apparently as a routine matter, instructed the jury that the state had to prove the facts specified in the bill of particulars. In addition, the court gave instructions on the lesser included offense of second-degree murder.

After the jury began its deliberations, the foreman asked the judge to repeat the instructions concerning the time constraints imposed by the bill of particulars. After the judge repeated the instruction, the state moved to amend its bill of particulars to conform to the evidence. Mars objected to the amendment, and the trial court denied the motion. After continued requests for clarification or assistance, the jury foreman addressed the court as follows:

> I would like to make a statement to you on behalf of the whole jury. Your Honor, we do not have grave doubts about the facts of this trial, but we do have grave doubts about the time constraints within the statement of particulars.
>
> We have requested before and request this time your assistance in dealing with these constraints properly. If you are unable to assist us with this question, we must, we will have to give this question strict interpretation, as we see it.

The trial court again instructed the jury that the state must prove the facts alleged in the bill of particulars. The jury returned with a verdict of not guilty.

---

**1.** Although the Committee Notes to Florida Rule of Criminal Procedure 3.140(n) characterize the rule's use of the phrase "Statement of Particulars" as a modernization, we retain the more traditional "bill" of particulars throughout this opinion.

**2.** The first indictment reads in pertinent part:

## PROCEDURAL HISTORY

On July 7, 1983, a grand jury returned an indictment against Mars for the murder of Willie Berry, this time under a count of second-degree murder. This indictment alleged that the murder occurred on January 30, 1983.[2] The state also filed a new bill of particulars alleging that Mars committed the crime between "1 A.M. January 30, 1983 and 1 A.M. January 31, 1983." Mars moved to dismiss the indictment, contending that this successive prosecution violated the Constitution's prohibition against double jeopardy. The trial court granted the motion and dismissed the indictment.

On appeal, the state district court of appeals initially held that Mars was collaterally estopped from asserting former jeopardy because he had requested the jury instruction restricting the state to proof within the specified time period and because he had opposed the state's motion to amend the bill of particulars to conform to the evidence. On petition for rehearing, the appellate court affirmed dismissal of the indictment noting that in its prior ruling it had erroneously concluded that Mars had requested the jury instruction restricting the state to the specified time period. The appellate court also certified the following question of "great public importance" to the Florida Supreme Court:

> Does the rule of *State v. Beamon* [298 So.2d 376 (Fla.1974)] permitting the filing of subsequent charges apply in a case where the defendant was acquitted by general verdict in the initial proceedings and the defendant did not seek a directed verdict of acquittal or request an instruction to the jury as to the binding nature of a bill of particulars in those proceedings?

*State v. Mars*, 473 So.2d 719, 720 (Fla. 4th D.C.A. 1985).

> FRANK MARS ... on or about the 30th day of January [1983], did unlawfully from a premeditated design to effect the death of a human being kill and murder WILLIE BERRY....

The second indictment reads in pertinent part:
> FRANK MARS ... on the 30th day of January [1983], unlawfully killed a human being, to wit: WILLIE BERRY.

The Florida Supreme Court found the certified question moot and quashed the district court of appeal's decision. *State v. Mars*, 498 So.2d 402 (Fla.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). The court held that no "jeopardy" existed from which Mars could assert double jeopardy because under Florida's variance theory the second indictment charged Mars with a different crime. The court framed the issue as whether the facts in the second indictment, as limited by its bill of particulars, would support a conviction on the first indictment, as limited by the original bill of particulars. Under Florida law, the court held that the second indictment, alleging the murder of Willie Berry between the hours of 1 a.m. January 30 and 1 a.m. January 31, constituted a separate offense from the original indictment alleging the murder of Willie Berry between the hours of 5 p.m. January 29 and 12:59 a.m. January 30.

Mars remained in prison and subsequently filed a petition for writ of habeas corpus in federal district court.[3] A magistrate heard oral argument on March 9, 1988. On April 29, 1989, the magistrate recommended that the district court grant the writ of habeas corpus and deny the request for an injunction as moot, finding that further prosecution of Mars for the murder of Willie Berry violated double jeopardy. The state submitted written objections to the report and recommendation, to which Mars replied. On June 16, 1988, the district court conducted a hearing by means of a telephone conference call, and on October 26, 1988, adopted the magistrate's report and recommendation. The state appeals.

## CONTENTIONS

The state contends that the district court lacked jurisdiction over the petition for writ of habeas corpus because Mars failed to challenge the constitutionality of Florida's rule of variance pleading in his petition. The state also contends that the district court erroneously characterized the indictment for second-degree murder as a lesser included offense of the first indictment. Mars contends that the district court ruled properly both in finding jurisdiction and in granting the writ on double jeopardy grounds.

## ISSUES

The issues presented in this case are: (1) whether the district court had jurisdiction; and (2) whether the double jeopardy clause of the United States Constitution bars a second prosecution for murder when the two indictments charge greater and lesser offenses for the same act, but where the bill of particulars limiting each indictment vary as to the specific hours for commission of the crime.

## DISCUSSION

Whether this court has jurisdiction over a particular case is a question of law subject to plenary review. *Burns v. United States ex rel. IRS*, 887 F.2d 1541, 1543 (11th Cir.1989). Whether a successive prosecution is constitutionally barred by the double jeopardy clause is also a question of law subject to plenary review. *E.g., United States v. Aguilar*, 849 F.2d 92, 95 (3d Cir.1988); *Baker v. Metcalfe*, 633 F.2d 1198, 1201 (5th Cir. Unit A 1981), *cert. denied*, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981).

### A. Jurisdiction

The state contends that this court lacks jurisdiction because the Florida Supreme Court found no double jeopardy bar on independent and adequate state grounds.

---

**3.** Mars remained in custody under the authority of a parole warrant based on Willie Berry's homicide. He seeks a writ of habeas corpus and an injunction against further state proceedings under the second indictment.

Mars asserted jurisdiction under 28 U.S.C. § 2254 which provides that the district court shall entertain a habeas petition for a person "in custody pursuant to the judgment of a State court...." 28 U.S.C.A. § 2254 (West 1977). Because Mars was not in custody pursuant to a state court order, the district court accepted jurisdiction under 28 U.S.C. § 2241(c)(3) which provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless.... [h]e is in custody in violation of the Constitution or laws or treaties of the United States...." 28 U.S.C.A. § 2241(c)(3) (West 1971).

The only case cited by the state in support of this position is *Duncan v. Tennessee,* 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972). After hearing oral argument in *Duncan,* the Court decided that it had improvidently granted *certiorari.* The brief explanation offered by the Court for its finding that the grant of *certiorari* was unwarranted, however, has no precedential value.[4] *See Teague v. Lane,* — U.S. ——, 109 S.Ct. 1060, 1063, 103 L.Ed.2d 334 (1989) ("opinions accompanying the denial of *certiorari* cannot have the same effect as decisions on the merits"); *Barefoot v. Estelle,* 463 U.S. 880, 908, 103 S.Ct. 3383, 3402, 77 L.Ed.2d 1090 (1983) ("Denials of certiorari never have precedential value. . . .").

■ Mars claims that the double jeopardy clause bars his prosecution under the second indictment. The state counters that because Mars has not challenged the constitutionality of Florida's variance theory, this court has no jurisdiction. We disagree. We recognize that "[f]ederal courts should not be quick to conclude that simply because a state procedure does not conform to the corresponding federal statute or rule, it does not serve a legitimate state policy." *Illinois v. Somerville,* 410 U.S. 458, 468, 93 S.Ct. 1066, 1072, 1072, 35 L.Ed.2d 425 (1973). Mars is not required, however, to challenge Florida's variance theory by name in order to invoke our jurisdiction to determine whether his federal constitutional rights will be violated by prosecution under the second indictment. For the purpose of habeas corpus, he adequately alleges that he is held in custody in violation of the United States Constitution.

■ We are bound to accept the Florida Supreme Court's construction of Florida statutes, but we are not bound by the state court's legal conclusion that the reprosecution of Mars does not violate the double jeopardy clause. *See Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (Supreme Court not bound by state court's legal conclusion that double jeopardy violated). The federal courts, and not the state courts, are the final arbiters of the scope of federal constitutional rights. *See, e.g., Reynolds v. Sims,* 377 U.S. 533, 566, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (state may not restrict federally protected right); *Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) (federal courts determine the scope of federal constitutional rights). Florida may expand its protection for double jeopardy based on independent and adequate state grounds, but it may not derogate federal protection against double jeopardy on independent and adequate state grounds.[5] The Florida Supreme Court denied Mars's double jeopardy claim on the basis of state law; if, however, on our

---

**4.** The Court originally granted *certiorari* to consider claims based on the double jeopardy clause; however, "[a]fter briefing and oral argument, it now appears that those questions are so interrelated with rules of criminal pleading peculiar to the state of Tennessee, the constitutionality of which is not at issue, as not to warrant the exercise of the *certiorari* jurisdiction of this court." *Duncan,* 405 U.S. at 127, 92 S.Ct. at 785.

**5.** *See, e.g., Florida v. Casal,* 462 U.S. 637, 103 S.Ct. 3100, 77 L.Ed.2d 277 (1983) (per curiam) (*certiorari* improvidently granted where suppression of evidence rested on independent and adequate state grounds).

The state relied solely on *Duncan* for its independent and adequate state grounds argument because other cases on this issue provide no support. In the leading recent case discussing the doctrine of independent and adequate state grounds, the Court distinguished questions of substantive federal law from procedural state law issues.

[S]ince *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), it has been the rule that the federal habeas petitioner who claims he is detained pursuant to a final judgment of a state court in violation of the United States Constitution is entitled to have the federal habeas court make its own independent determination of his federal claim, without being bound by the determination on the merits of that claim reached in the state proceedings. This rule of *Brown v. Allen* is in no way changed by our holding today. Rather we deal only with contentions of federal law which were *not* resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure.

*Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977) (emphasis original).

independent review, his reprosecution violates *federal* double jeopardy guarantees, then the writ must be granted. *See Murdock v. Memphis*, 20 Wall 590, 633, 87 U.S. 590, 631–37, 22 L.Ed. 429, 443–44 (1874) (if the federal question must dispose of the whole case, an erroneous state court determination of federal question must be reversed). Accordingly, we hold that Mars's petition for habeas corpus based on a double jeopardy challenge invokes our jurisdiction.

## B. Double Jeopardy

The double jeopardy clause of the fifth amendment provides that the government shall not put a person in jeopardy of life or limb twice "for the same offence." [6] The courts have applied double jeopardy protection in three broad categories of cases: (1) successive prosecution for the same offense after acquittal; (2) successive prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The scope of these guarantees has not proven susceptible to rigid or mechanical rules of interpretation. *Serfass v. United States*, 420 U.S. 377, 390, 95 S.Ct. 1055, 1063–64, 43 L.Ed.2d 265 (1975). The difficulty of interpretation "turns upon the meaning of the words 'same offense,' a phrase deceptively simple in appearance but virtually kaleidoscopic in application." *Whalen v. United States*, 445 U.S. 684, 700, 100 S.Ct. 1432, 1442, 63 L.Ed.2d 715

(1980) (Rehnquist, J., dissenting). In this case, the state has accurately framed the issue as whether the first and second indictments charge "the same offense." [7]

### 1. The *Nielsen* and *Blockburger* Tests

The Supreme Court first construed the meaning of "same offense" to determine whether a conviction for cohabitation barred a subsequent prosecution for adultery. *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Nielsen first pled guilty to unlawful cohabitation between October 15, 1885 and May 13, 1888 charged in the first indictment. The second indictment charged him with adultery on May 14, 1888.[8] Although these federal statutes each required proof of a different element, and the adultery charge alleged a separate time for the offense, the Court held that the second prosecution was barred. The Court applied the following test: "where ... a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence." *Nielsen*, 131 U.S. at 188, 9 S.Ct. at 676. Under this test, an offense is "the same" if it requires the prosecutor to prove the same conduct, or "incidents", relied on in the original prosecution.

In a case where the defendant challenged the imposition of two sentences for the same act, the Court formulated a different test which focuses on the statutory elements of the offenses. *Blockburger v.*

---

6. U.S. Const.amend. V. The fifth amendment guarantee against double jeopardy was made enforceable against the states through the fourteenth amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Florida's Constitution provides that "[n]o person shall ... be twice put in jeopardy for the same offense...." Fla. Const. art. I, § 9. Florida Statutes Annotated § 910.11 (West 1985) further provides that:

No person shall be held to answer on a second indictment, information, or affidavit for an offense for which he has been acquitted. The acquittal shall be a bar to a subsequent prosecution for the same offense, notwithstanding any defect in the form or circumstances of the indictment, information, or affidavit.

7. The state relies entirely on its contention that no former jeopardy exists because the indictments charge separate offenses. The state does not argue that Mars's objection to the state's motion to amend the bill of particulars estops him from claiming double jeopardy protection.

8. The Supreme Court found that
[i]f the unlawful cohabitation continued after the 13th of May, and if the adultery was only a part of and incident to it, then an indictment for the adultery was no more admissible, after conviction of the unlawful cohabitation, than a second indictment for unlawful cohabitation would have been; and for the very good reason, that the first indictment covered all continuous unlawful cohabitation down to the time it was found.
*Nielsen*, 131 U.S. at 185, 9 S.Ct. at 675.

**1354**

*United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...." 284 U.S. at 304, 52 S.Ct. at 182. Applying that test to the facts, the court found that one sale of drugs could violate both a statute forbidding the sale of drugs except in the original package and the offense of selling drugs without a prescription. 284 U.S. at 303–04, 52 S.Ct. at 181–82. [9]

In recent cases, the Supreme Court has relied on both the *Nielsen* and *Blockburger* tests to define when two offenses are the same. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Court analyzed whether auto theft and joyriding under Ohio law constituted "the same offense" for purposes of double jeopardy by first applying the *Blockburger* test. The facts underlying the case are relatively simple. The defendant stole a car in East Cleveland, Ohio, and was apprehended nine days later driving the car in Wycliff, Ohio. Brown pled guilty to "joyriding" charges brought against him in Wycliff. After serving 30 days in jail and paying a $100 fine, Brown was returned to East Cleveland where he was charged with auto theft.

The Ohio Court of Appeals found that the two crimes constituted the same offense for double jeopardy purposes. The statutory elements of joyriding and auto theft were the same except that auto theft required additional proof of intent to permanently deprive the owner of possession. Once the prosecutor proved auto theft, joyriding was also proved because it was a lesser included offense. "[T]he Ohio Court of Appeals nevertheless concluded that Nathaniel Brown could be convicted of both crimes because the charges against him focused on different parts of his 9–day joyride." *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. at 2227. The United States Supreme Court disagreed based on state statutory interpretation. The legislative intent and the state court interpretation of the statutes made theft and joyriding a single offense. The Court explained that although the prosecutors "had different perspectives on Brown's offense," absent legislative intent they could not divide a single offense under Ohio law into separate crimes. *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. at 2227. "[T]he specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense...." 432 U.S. at 170, 97 S.Ct. at 2227.

After completing its *Blockburger* analysis, the Court emphasized the vitality of the *Nielsen* test, noting that its decision "merely restates what has been this Court's understanding of the Double Jeopardy Clause at least since *In re Nielsen* was decided in 1889." *Brown v. Ohio*, 432 U.S. at 163–64, 97 S.Ct. at 2224–25. The Court recognized that the *Blockburger* test is only the first step in analyzing whether successive prosecutions charge the "same offense." "Even if two offenses are sufficiently different to permit the imposition of consecutive sentences [under *Blockburger*], successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown v. Ohio*, 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6. The offenses of joyriding and auto theft satisfied the *Blockburger* test as "the same offense"; but the Court acknowledged that in other cases involving successive prosecutions *Blockburger* may not provide an adequate test. Thus, even if two offenses are not "the same" under *Blockburger*, the courts should conduct a second tier of analysis under *Nielsen*.

---

**9.** The *Nielsen* test was inapplicable to the facts in *Blockburger*. In *Blockburger*, the defendant challenged the imposition of multiple punishments in the same trial for "the same offense" —a single sale of drugs. The *Nielsen* test is only applicable to successive prosecutions. Under *Nielsen*, if an individual has been convicted (or acquitted) in one trial, the state may not prosecute that individual again by proving "incidents" already adjudicated in the first trial.

The Court followed this two-tiered approach in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). In *Vitale*, the state sought to prosecute a driver for involuntary manslaughter after he had already pled guilty and paid a fine for failing to slow to avoid an accident. The trial court and state appellate court both found the manslaughter prosecution barred by state compulsory joinder statutes requiring that all charges be brought in a single prosecution. The Supreme Court of Illinois affirmed, but on federal double jeopardy grounds. The state court held that "the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter, ... for purposes of the double jeopardy clause, the greater offense is by definition the 'same' as the lesser offense included within it." *Vitale*, 447 U.S. at 414, 100 S.Ct. at 2264 (quoting *In re Vitale*, 71 Ill.2d 229, 239, 16 Ill.Dec. 456, 460, 375 N.E.2d 87, 91 (1978)).

The United States Supreme Court vacated the Illinois court's decision "[b]ecause of our doubts about the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, and because the reckless act or acts the State will rely on to prove manslaughter are still unknown." *Vitale*, 447 U.S. at 421, 100 S.Ct. at 2267. The Court's first doubt concerned the *Blockburger* test. If the manslaughter charge could be proved without relying on the element of failure to slow, then the two offenses would not be "the same" under the *Blockburger* test. Although the state supreme court held that as a matter of statutory construction the offenses violated

double jeopardy, the Court was "reluctant to accept its rather cryptic remarks about the relationship between the two offenses involved here as an authoritative holding that under Illinois law proof of manslaughter by automobile would always involve a careless failure to reduce speed to avoid a collision." *Vitale*, 447 U.S. at 419, 100 S.Ct. at 2266.

Turning to the *Nielsen* test, the Court cautioned that Vitale would have a viable double jeopardy claim if the state relied upon failure to slow at trial in order to prove manslaughter, or conceded that it would do so prior to trial. "In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris v. Oklahoma* [433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977)]." 447 U.S. at 420, 100 S.Ct. at 2267.[10] Thus, although the Court held that double jeopardy did not bar the prosecution on the record before it, the Court also cautioned that under *Nielsen*, it might not permit use of the elements underlying the original conviction to prove manslaughter.

### 2. Florida's Variance Theory

The state contends that the two indictments satisfy the *Blockburger* test for different offenses brought against Mars under a Florida judicial rule known as the variance theory.[11] Florida's variance theory differs from the *Blockburger* test in that it focuses on the facts alleged in the indictments rather than the statutory elements of the crimes.

> Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element and the other does not, without regard to the accusatory pleading or the proof adduced at trial.

**10.** In *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam), the Court quoted the *Nielsen* "incidents" language and held that a prosecution for robbery was barred by double jeopardy following a prior conviction for felony murder based on the robbery.

**11.** The Florida Legislature has codified the *Blockburger* test for determining whether separate sentences may be imposed. *State v. Smith*, 547 So.2d 613, 615 (Fla.1989). Florida Statutes Annotated § 775.021(4)(a) (West Supp.1989) provides that:

Florida's test for determining whether successive prosecutions impermissibly involved the same offense is based upon the sufficiency of the allegations in the second information with regard to a conviction of the offense charged in the first. If the facts alleged in the second information, taken as true, would have supported a conviction of the offense charged in the prior information, the offenses are the same and the second prosecution is barred. *Bizzell v. State,* 71 So.2d 735 (Fla.1954).

*State v. Katz,* 402 So.2d 1184, 1186 (Fla. 1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982). The stated purpose of this test is "to prevent the unjust results occurring under the rules of common law pleading which made the slightest variation between the pleadings and proof fatal to the prosecution." *Katz,* 402 So.2d at 1186.

The origin of Florida's variance theory can be traced back to *Sanford v. State,* 75 Fla. 393, 396, 78 So. 340, 341 (1918). Sanford was initially charged by information with assault with intent to commit rape. He pled guilty to the lesser charge of assault and battery and was adjudicated guilty. A grand jury later indicted Sanford in another jurisdiction with the same rape. The jury found him guilty of assault with intent to commit rape.

The Florida Supreme Court held that the second prosecution violated the double jeopardy provision of the Florida Constitution. The court reasoned that Sanford's conviction of the lesser offense of assault and battery constituted an acquittal of the greater offense of assault with intent to commit rape. In addition, the court cited a slightly different rule: "The test is whether, if what is set out in the second indictment had been proved under the first there could have been a conviction. When there could, the second cannot be maintained." *Sanford,* 78 So. at 340 (citing Bishop, New Criminal Law, § 1051(6) (9 ed. 1923)).

Florida's variance theory historically has allowed a second prosecution only when the defendant relied on the variance to avoid conviction. In *Driggers v. State,* 137 Fla.

182, 188 So. 118 (1939), the defendants were charged by information with larceny of a cow, but at trial the evidence proved larceny of a calf. A jury acquitted the defendants. The state supreme court held that the subsequent information charging the defendants with larceny of a calf was barred by double jeopardy because the original acquittal did not necessarily turn on the cow/calf discrepancy. The jury simply could have found Driggers not guilty of the theft. In *State v. Bentley,* 81 So.2d 750 (Fla.1955), the court distinguished *Driggers* noting that the defendants in *Driggers* had not taken affirmative action in the original trial to establish the materiality of the variance, leaving open the question whether the result would have been different if the defendants had moved for a directed verdict based on the variance.

Several Florida cases demonstrate that when a defendant relies on a material variance in obtaining a directed verdict, the bar of double jeopardy is not available. *State v. Beamon,* 298 So.2d 376 (Fla.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *State v. Bentley,* 81 So.2d 750 (Fla.1955); *State v. Anders,* 59 So.2d 776 (Fla.1952). In *State v. Katz,* 402 So.2d 1184, 1185 (Fla.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982), the trial court dismissed the case based on its own observation that the information charged the defendant with "breaking into his own car." Katz argued that he was not estopped from claiming double jeopardy because the court had acted on its own initiative. The Florida Supreme Court disagreed, stating that "[t]he import of the *Beamon, Bentley,* and *Driggers* decisions is that if a variance is substantial enough to form the basis for an acquittal, it must be deemed a material variance." The fact that the court observed the variance on its own and dismissed the case did not "alter the underlying principle." *Katz,* 402 So.2d at 1187. The court reaffirmed the distinction between those cases in which the material variance resulted in a dismissal or directed acquittal from *Driggers* where the jury returned a general acquittal in which "the jury could have found [the defendants] not

guilty on the actual merits of the case." *Katz*, 402 So.2d at 1186 (quoting *State v. Bentley*, 81 So.2d at 751).

The Florida Supreme Court's decision in *State v. Mars* is a radical departure from that court's previous interpretation of the variance theory.[12] The court completely abandoned the distinction between directed verdicts of acquittal based on a material variance and general acquittals such as *Driggers v. State*. The court held that the two indictments as limited by their bills of particulars did not charge the "same offense" because of the variance in time without addressing the nature of the acquittal.[13]

The only way to square the court's decision in *State v. Mars* with prior state law is to examine the questions the jury raised during the deliberations and assume that the jury's verdict was based on the time variance. The district court properly found that such speculation into the specific grounds behind a general verdict of acquittal would "violate established double jeopardy principles and represent an unprecedented and dangerous invasion of the sacrosanct province of the jury in the setting of a criminal trial." *See McDonald v. Pless*, 238 U.S. 264, 269, 785, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (testimony of jurors may not be used to impeach their verdict). The absolute nature of the general verdict is underscored by the prosecution's unsuccessful attempt to interview the jurors following return of the verdict in order to establish the basis of acquittal.

### 3. Bill of Particulars

In *Middleton v. State*, 74 Fla. 234, 240, 76 So. 785, 787 (1917), the court stated that

> [t]he purpose of a bill of particulars is merely to give the defendant notice of the particular acts relied upon by the state to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him, and that he may have an opportunity to prepare his defense.

A bill of particulars is granted at the court's discretion on a defendant's motion for a more definite statement of the conduct charged.[14] If the court considers the indictment sufficiently specific to give the defendant notice of the crime charged, the court may deny the defendant's motion. "[T]he effect of such a specification of date in a bill of particulars is to narrow the Indictment or Information as to the time within which the act or acts allegedly constituting the offense may be proved." *State v. Beamon*, 298 So.2d 376, 379 (Fla. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975).

The Florida Supreme Court's analysis in this case depended on the specification of the time the crime occurred in the bills of particulars. The indictments identify the date, January 30, 1983, but do not specify the time of the murder. Mars did not request a bill of particulars, nor could it be argued that the indictment alleging the murder of Willie Berry on or about 30 January, 1983, is not sufficiently specific.

---

**12.** *See generally* Comment, *Double Jeopardy In Florida: Two Bites of the Same Apple, An Offensive Nullification*, 17 Stetson L.Rev. 343 (1988) (result in *State v. Mars* cannot be explained by state variance theory precedent).

**13.** The Florida Supreme court adapted the variance theory to the facts of this case as follows:

> Would the facts in the second indictment, taken to be true, alleging that respondent murdered decedent between the hours of 1 a.m., 30 January, and 1 a.m., 31 January support a conviction on the first indictment alleging that respondent murdered decedent between the hours of 5 p.m., 29 January and 12:59 a.m., 30 January?

*State v. Mars*, 498 So.2d at 404.

**14.** Florida Rule of Criminal Procedure 3.140(n) (Statement of Particulars) provides that:

> The court, upon motion, shall order the prosecuting attorney to furnish a statement of particulars, when the indictment or an information upon which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense. Such statement of particulars shall specify as definitely as possible the place, date, and all other material facts of the crime charged that are specifically requested and are known to the prosecuting attorney, including the names of persons intended to be defrauded. Reasonable doubts concerning the construction of this rule shall be resolved in favor of the defendant.

**1358**

The prosecution offered this statement of particulars as a section of the same document in which it requested notice of alibi from the defendant. Mars, however, did not present an alibi defense or move for a directed acquittal based on the variance.

#### 4. Analysis

We begin our analysis by observing a fundamental principle for determining whether two indictments charge the same offense. "It has long been understood that separate statutory crimes need not be identical—either in constituent elements *or in actual proof*—in order to be the same within the meaning of the constitutional prohibition." *Brown v. Ohio*, 432 U.S. at 164, 97 S.Ct. at 2225 (emphasis added). The state concedes that second-degree murder is a lesser included offense of first-degree murder. Therefore, under a strict application of the *Blockburger* test, which looks only to the statutory elements of the indictments, the prosecution of Mars for second-degree murder after his acquittal for first-degree murder violates double jeopardy. However, the state contends that, as a matter of state law, the second indictment charges "an offense mutually exclusive and unrelated to the crime from which [Mars] was acquitted" because of the time constraints imposed by the bills of particulars. We reject that argument for two reasons.

The district court ruled that the indictment of Mars for the murder of Willie Berry on or about January 30, 1983, represents a single "allowable unit of prosecution," prohibiting reindictment of Mars for the same murder, of the same victim, on the same date. *See Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952)). In addition, the district court held that to the extent the Florida Supreme Court's interpretation of the variance theory divides a single allowable unit of prosecution into separate crimes through reliance on a bill of particulars,

such a theory contravenes the federal constitutional guarantee against double jeopardy.

■ We note that the state is not obligated to issue a bill of particulars with every indictment. The bill is designed as a shield for defendants to protect themselves against surprise at trial by granting them limited discovery of the state's proof. It is not designed for the state's use as a sword to sever a single offense into separate crimes absent legislative intent. In oral argument, counsel for the state conceded that under the version of the variance theory they argue here, the state could prosecute a defendant an unlimited number of times by simply changing the alleged hour of the crime. We agree with the district court's ruling that double jeopardy bars successive prosecutions which vary only in the time periods alleged in their respective bills of particulars. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spacial units." *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. at 2227.

■ In addition, we reject the state's argument because the two indictments, even as limited by their bills of particulars, do not charge crimes that could be tried in one trial and result in two separate sentences. As the Supreme Court observed in *Brown v. Ohio*, "[i]f two offenses are the same under [the *Blockburger* test] for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." 432 U.S. at 166, 97 S.Ct. at 2226. As a matter of state law, Mars could not be separately sentenced at a single trial for the first-degree murder of Willie Berry at noon and the second-degree murder of Willie Berry at night. The Florida Legislature clearly expressed its intent that separate sentences may not be imposed for greater and lesser offenses, regardless of the proof adduced at trial through its codification of the *Blockburger* test.[15] *See*

15. Fla.Stat.Ann. § 775.021(4) (West 1985). *Cf.*

*Houser v. State*, 474 So.2d 1193, 1196 (Fla.1985)

*generally State v. Smith,* 547 So.2d 613 (Fla.1989) (interpreting Fla.Stat. § 775.021(4)). Because the Florida Legislature has forbidden the imposition of cumulative punishment for the crimes charged in the indictments in a single trial, the double jeopardy clause bars successive prosecutions under those indictments.

The state's second prosecution of Mars for the murder of Willie Berry would also violate the broader double jeopardy protection provided under the *Nielsen* test. In a second trial, the state would have to rely on the same "incidents" of which Mars was acquitted in the original trial to prove its second-degree murder case. The jury returned a general verdict acquitting Mars of each element of the offense charged by the state. "[T]he Double Jeopardy Clause attaches special weight to judgments of acquittal." *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). The inviolability of an acquittal is so fundamental a rule that it is extended "to situations where an acquittal is 'based upon an egregiously erroneous foundation.'" *Sanabria v. United States,* 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978) (quoting *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962)). Unlike *Vitale,* where the Court reasoned that the state might prove manslaughter without relying on the "incidents" of the prior conviction, it is beyond doubt that the state will have to rely on the "incidents" of Mars's acquittal.

One of the central objectives of the double jeopardy prohibition against successive trials is to prevent the state, with its unlimited resources, from using the first trial in the appellate process to pinpoint the inadequacies of its case. The double jeopardy clause forbids a second trial for the purpose of affording the prosecution "another opportunity to supply evidence that it failed to muster in the first trial." *Burks v. United States,* 437 U.S. 1, 9, 98 S.Ct. 2141, 2146, 57 L.Ed.2d 1 (1978). This aspect of double jeopardy protection "prevents the State from honing its trial strategies and perfecting its evidence through successive

attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The prosecution had a full and fair opportunity to present its evidence against Mars in the original trial. His retrial would improperly grant the prosecution an opportunity to perfect the evidence it mistakenly identified in the original trial.

The Florida Supreme Court departed from its prior analysis of variance theory in *State v. Mars* in order to avoid the double jeopardy consequences of what it characterized as "a non-prejudicial typing error." *State v. Mars,* 498 So.2d at 405. Although Mars's acquittal may be a consequence of that error, we are prohibited from attempting to divine the reasons behind the jury's verdict. *Sanabria,* 437 U.S. at 64, 98 S.Ct. at 2178–79. The state bears the risk of its own errors or mistakes at trial. *Addington v. Texas,* 441 U.S. 418, 423–24, 99 S.Ct. 1804, 1807–08, 60 L.Ed.2d 323 (1979). The court's duty is to resist the "strong temptation to relax rigid standards when it seems the only way to sustain convictions of evildoers." *Krulewitch v. United States,* 336 U.S. 440, 457, 69 S.Ct. 716, 725, 93 L.Ed. 790 (1949). Based on our analysis under the *Blockburger* test, we hold that the second indictment of Frank Mars for the murder of Willie Berry charges him with "the same offense" of which he was acquit-

(legislature presumed not to intend to punish a single homicide under two separate statutes).

**1360**

ted in the original indictment. Our conclusion that Mars's prosecution under the second indictment violates the double jeopardy clause is further supported by *In re Nielsen* and the policies underlying double jeopardy.

Our decision should not produce harsh results in future Florida cases. The Florida Supreme Court recently retreated from the rule that an indictment cannot be amended. *Tingley v. State,* 549 So.2d 649 (Fla.1989). A grand jury indicted Tingley on four counts of sexual battery of a minor, charging that the incidents occurred between April 1, 1982, and September 30, 1982. In response to a defense motion, the state filed a bill of particulars which was amended four times. It finally specified that the crimes occurred between September 1, 1981, and March 1, 1982. Tingley was convicted and on appeal contended that the last bill of particulars was an impermissible amendment which voided the indictment. The Florida Supreme Court held that "time is not ordinarily a substantive part of an indictment or information and there may be a variance between the dates proved at trial and those alleged in the indictment or information" as a general rule.[16] In light of *Tingley,* trial courts have the discretion to permit amendments of the time alleged in an indictment or its bill of particulars in cases where it would not prejudice the defendant.

## CONCLUSION

In summary, we hold that the double jeopardy clause of the fifth amendment bars reprosecution for the murder of the same victim following a general verdict of acquittal.[17] Therefore, the district court's

grant of the writ of habeas corpus is affirmed.

AFFIRMED.

---

16. The court held this rule to apply in cases where "(1) the crime was committed before the return date of the indictment; (2) the crime was committed within the applicable statute of limitations; and (3) the defendant has been neither surprised nor hampered in preparing his defense." *Tingley,* 549 So.2d at 650.

Prior to *Tingley,* times within an indictment could not be modified by amendment under Florida law. *See, e.g., Pickeron v. State,* 94 Fla. 268, 113 So. 707 (1927). That rule sprang from

a common law principle assuring fair notice of the charges under an indictment at a time when discovery was nonexistent or severely limited. Cf. *Hoffman v. State,* 397 So.2d 288 (Fla.1981) (bill of particulars to an information may be amended if defendant not prejudiced).

17. We do not address the constitutionality of Florida's variance rule as it is applied to dismissal of indictment and directed judgment of acquittal cases.