**Frank CUETO, Sr., Petitioner,**

v.

**Harry K. SINGLETARY, Jr.,[1] Robert A. Butterworth, Jr., Respondents.**

**No. 90–1565–CIV–T–10C.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 22, 1991.

Manuel Anthony Machin, Manuel A. Machin, P.A., Tampa, Fla., for petitioner.

Stephen Allan Baker, Atty. Gen.'s Office, Tampa, Fla., for respondents.

## ORDER

HODGES, District Judge.

THIS CAUSE comes on for consideration upon the magistrate's report and recommendation recommending that the above styled petition be granted. All parties previously have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to Section 636(b)(1), Title 28, United States Code.

---

1. Richard L. Dugger has been replaced by Harry K. Singletary, Jr. as the Secretary of the Department of Corrections for the State of Florida.

Substitution is therefore required under Rule 25(d), Fed.R.Civ.P.

Upon consideration, of the report and recommendation of the magistrate, all objections thereto timely filed by the parties and upon this court's independent examination of the file, it is determined that the magistrate's report and recommendation should be adopted.

Accordingly, it is now

ORDERED:

(1) The magistrate's report and recommendation is adopted and incorporated by reference in this order of the court.

(2) The petition for writ of habeas corpus is hereby GRANTED.

(3) All records pertaining to petitioner's prosecution and conviction for grand theft in Case Number 88–11116 shall be expunged pursuant to Florida law.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of a petition for writ of habeas corpus filed by petitioner pursuant to Title 28, United States Code, Section 2254. Petitioner was convicted following trial in Hillsborough County, Florida, on or about November 7, 1988, of Grand Theft in the First Degree, under Florida Statute § 812.014(2)(a) and sentenced to a term of fifteen (15) years probation in Case No. 88–11116 (Cueto II). Petitioner had previously been prosecuted for Grand Theft, First Degree under Florida Statute § 812.014(2)(a) in Case No. 88–3956 (Cueto I), but received a judgment of acquittal at the end of the State's case-in-chief.

Petitioner contends that his conviction violated his guarantee against double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution. Oral argument has been held and for the reasons set forth below, the undersigned recommends that the petition be GRANTED.

I

The trial transcripts of both trials have been filed.[2] A review of the two prosecutions is necessary in order to determine if the same conduct was the subject of both prosecutions.

*Cueto I (Case No. 88–3956)*

On June 8, 1988, the State Attorney filed an information (Case Number 88–3956) (Cueto I) charging petitioner with Grand Theft, First Degree under Florida Statute § 812.014(2)(a).

The information in Cueto I alleged in pertinent part that:

> ... FRANK CUETO, SR., on the 25TH day of MARCH, 1986, did knowingly and unlawfully obtain or use, or endeavor to obtain or use, certain property of another, to wit: TWENTY THOUSAND and 00/100 DOLLARS ($20,000.00) IN U.S. currency, the property of VIOLETA GARCIA, ....

(Dkt. 10, Ex. 1)

The bill of particulars alleged the place of the offense was the Key Bank, but "other events leading up to and surrounding the crime occurred at other locations." (Dkt. 7, Composite Ex. B).

The petitioner is a self-employed bail bondsman duly licensed by the state of Florida. The facts of this case, as set forth below, arose out of a business transaction with the victim, Violeta Garcia.

Mrs. Garcia's son, Marcus Betancourt, was arrested in 1984 for three felony charges, and bail was set at $30,000. Petitioner guaranteed Mr. Betancourt's bail in exchange for a $3,000 premium. In lieu of cash for the premium, petitioner received a $30,000 mortgage on a house owned by Mrs. Garcia. The bond was subsequently reduced to $20,000 after the State Attorney did not file one of the charges, but petitioner's $3,000 premium remained unchanged. (T. 163–164)

Mr. Betancourt failed to appear at a hearing in March of 1985, and Judge Harry

---

**2.** Petitioner filed the transcript of Cueto II (Case No. 88–11116) on June 20, 1991. Respondent filed the transcript of Cueto I (Case No. 88–3956) on September 13, 1991.

Lee Coe issued a capias for Mr. Betancourt on April 23, 1985. (T. 165) He also entered an order estreating the bond on April 30, 1985. (T. 167) Judge Coe granted a motion for extension of time in which to produce Mr. Betancourt and extended the time for forfeiture of the bond to September 21, 1985. (T. 169) In the meantime, petitioner contacted Mrs. Garcia to make arrangements to obtain payment for the amount of the forfeiture.

Mrs. Garcia obtained a loan from Old Stone Credit Insurance (Old Stone), formerly Uni–Mortgage Corporation, with the assistance of Nadie Alvarez, who Mr. Betancourt had told Mrs. Garcia to see if he failed to appear in court. (T. 33) Mrs. Garcia testified that Mr. Alvarez referred her to his father, Junior Alvarez, and Sam Lupo, who were mortgage brokers. (T. 34)

Mr. Lupo testified that he gave Mrs. Garcia the necessary forms in order for her to obtain the loan. (T. 110) Mr. Lupo stated he took Mrs. Garcia to the closing after the loan was approved, and petitioner was there. (T. 112–114) He testified that he found out that Mrs. Garcia needed the loan in order to pay petitioner money for her son's bail. (T. 114)

A check made payable by Uni–Mortgage Corporation of Florida (Old Stone) to Violeta Garcia and petitioner's insurer, Accredited Surety and Casualty Co. ("Accredited"), in the amount of $20,000, was given to Mrs. Garcia. The custodian of Old Stone, Benjamin Smith, identified various documents related to the loan transaction at the trial. (T. 130–134)

Mrs. Garcia testified that she endorsed the check and gave it to petitioner. (T. 38) Petitioner then mailed the check to his insurer, Accredited.

Accredited endorsed the check and returned it to petitioner on May 31, 1985, after the motion for extension of time in order to find Mr. Betancourt was filed.

Hank Snow, the president of Accredited, testified that he had endorsed the check for $20,000 and returned it to petitioner to pay the forfeiture on Mr. Betancourt's bail bond. (T. 99) Virginia Rader, the secretary/treasurer of Accredited, identified a typewritten note which she sent to petitioner on this date, stating that Accredited had endorsed the check and was returning it to petitioner for payment of Mr. Betancourt's bond. (T. 94)

Petitioner deposited the check into his personal business account on July 8, 1985. (Dkt. 7, Composite Exhibit B, A–12) The money remained in his possession until at least July 1, 1988.

Michael Pupello, the custodian of Key Bank, where petitioner kept his account, confirmed that $20,000 was placed in petitioner's money market account on July 8, 1985. (T. 136) He testified regarding the monthly balances of the account and the interest earned on the money from the date of deposit until June, 1988. (T. 137–145)

Final judgment was entered on the bond forfeiture in the amount of $20,000 on March 12, 1986. (T. 170) However, Mr. Cueto's attorney, Daniel Fernandez, filed a motion to stay the judgment on March 24, 1986, since Mr. Betancourt had been apprehended in Georgia on March 6, 1986. (T. 171–172)

Judge Coe testified at the trial regarding the setting aside of the bond estreature.[3] He identified the written order setting aside the Final Judgment and Bond Estreature, which was signed on April 2, 1986, but stated that he had actually granted the motion to set aside the bond estreature in open court on March 24, 1986.[4] (T. 147–149) Judge Coe testified that the effect of that order was that petitioner would be released from any obligation to pay the bond. (T. 149)

---

**3.** Respondent stated during oral argument in this case on June 20, 1991 that Judge Coe had testified only in one trial. However, the transcripts show that he testified in both trials.

**4.** The transcript refers to the year 1988 in one place and to the month of August in another.

However, these appear to be errors in transcription. The record contains a copy of Judge Coe's order which shows that it was signed on April 2, 1986, after the motion was heard by Judge Coe on March 24, 1986. (Dkt. 7, Composite Ex. B)

Wanda Owens, the Clerk of the Circuit Court, identified the documents relating to the bond forfeiture and subsequent setting aside of that forfeiture by Judge Coe. (T. 167–173) She testified that there was a notation on the bottom of the motion to set aside the bond estreature which indicated that Judge Coe had granted the motion on March 24, 1986. (T. 171) However, the written order was not entered until April 2, 1986. (T. 147–149)

Ms. Owens also testified that there was a notation at the bottom of Judge Coe's written order setting aside the bond forfeiture on April 2, 1986 which stated that certified copies of the order had been sent to Mr. Fernandez, petitioner, the State Attorney's Office and the County Attorney's Office.[5] (T. 177)

The State also presented the testimony of Armando Roche, a bail bondsman. Mr. Roche testified about bail procedures in general, the practices relating to collecting bondsman's fees, and the necessity of keeping the collateral separate from other funds of the bondsman. (T. 186–206)

At the close of the State's case, the defense made a motion for judgment of acquittal. (T. 237) Petitioner argued that the State had failed to prove he intended to steal the $20,000 from Mrs. Garcia on March 25, 1986.

The court noted that:

It seems to me an integral part of the State's case is that he (petitioner) had some knowledge of what Judge Coe did on March 24th. ... How do I make this leap of knowledge from the 24th that he knew on the 24th Judge Coe said you have got to give it (the $20,000) back? But he didn't know and that is what is troubling me.

(T. 271–272)

The State argued that there was an attorney (Mr. Fernandez) representing petitioner, and his knowledge regarding Judge Coe setting aside the bond forfeiture on March 24th should be imputed to petitioner under the laws of agency. (T. 271) The

State also argued that the issue was when petitioner had an obligation to return the money, not when petitioner had knowledge of that obligation. (T. 279) The prosecutor stated that "(if) we have alleged the wrong date, obviously we could amend the Bill of Particulars.... ... It seems to me that any date after the March 25th order is just as good as any other date after March 25th. There was a fiduciary responsibility, and that was the day on which the obligation became complete to return the money...." (T. 278)

The court disagreed with the State's arguments, stating that it was important that petitioner know that Judge Coe had said "You don't have to pay that money any more, so therefore you have got to give it back to Mrs. Garcia." (T. 281)

The court stated:

Now, it's reasonable to conclude through hearing all of the evidence that the State's theory is that when Judge Coe in open court granted defendant Accredited's Motion To Stay Final Judgment, which is State's Exhibit 21, the defendant should have immediately returned the money to Mrs. Garcia, and when he did not do it on March 25th, ... he therefore committed the offense of grand theft.

(T. 285) The court noted there was no evidence in the record that a copy of Judge Coe's order had been furnished to petitioner prior to the notation on April 8, 1986 stating that certified copies of the order had been sent. Moreover, the court stated Mr. Fernandez had not testified, so there was no evidence that he told petitioner what had transpired at the motion hearing on March 24th. (T. 286)

The court also stated the prosecution had failed to show that the property was Mrs. Garcia's on March 25, 1986 because the order setting aside final judgment had not been formally entered until April 2, 1986 and that Judge Coe's order on March 24, 1986 would have only stopped enforcement of the judgment. (T. 288)

---

5. The notation at the bottom of the order states that the copies were sent on April 8, 1986. (Dkt.

7, Composite Ex. B)

The court, in granting the motion for judgment of acquittal, concluded that:

> (T)he State of Florida has failed to make out a prima facie (case) of guilt as to the grand theft in the first-degree based on pleadings before me now, and based on the testimony and the evidence before me now in that it has failed to prove that on March 25, 1986, Mr. Cueto had a criminal intent to take, and that on March 25, 1986, this property was the property of Violeta Garcia.

(T. 289–290)

The State then moved to amend the bill of particulars to conform to the proof regarding the dates. (T. 291) However, the court determined that the defense would be prejudiced and denied the motion. (T. 293) The State also moved for a continuance to locate Mr. Fernandez, but the court denied this motion as well, stating that the order relieving the surety of his obligation was not entered until April 2, 1986. (T. 294–295) The motion for judgment of acquittal was granted the morning of August 3, 1988.

### Cueto II (Case No. 88–11116)

Later that afternoon, on August 3, 1988, the State charged petitioner for a second time with Grand Theft, First Degree (Case Number 88–11116) (Cueto II). The only difference between the first and second informations was that the date of offense was changed in the second information to "from on or about the 10th day of April 1986 and continuously thereafter until the date of the filing of this information." (Dkt. 10, Ex. 2).

Petitioner's motion to dismiss on double jeopardy grounds was denied on September 27, 1988. In denying the motion, the court stated it had found only that on the day of March 25, 1986, petitioner did not have criminal intent to deprive Mrs. Garcia of her property and the property was not owned by Mrs. Garcia. (T. 21–22)

The court relied on the case of *State v. Mars*, 498 So.2d 402 (Fla.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987) [6] in denying the motion. The court determined that taken as true, the facts alleged in the second information, that petitioner had appropriated Mrs. Garcia's money from on or about April 10, 1986, would not have supported a conviction on the first offense alleging that he had appropriated the property on March 25, 1986. The court found that "the State is not barred from the re-prosecution of Mr. Cueto's new information given the new dates." (T. 22–23)

Petitioner was tried and convicted on November 7, 1988. At the second trial, the prosecution called the same witnesses as in the first trial and two additional witnesses. The testimony of the former witnesses was substantially the same as in the first trial.

The first new witness was Darrell Dirks, the Assistant State Attorney for Hillsborough County who prosecuted Mr. Betancourt. He testified regarding the charges against Mr. Betancourt and the bond amounts. (T. 150–171)

The second new witness was Robert Gietzen, an investigator for the Hillsborough County State Attorney's Office who investigates criminal actions in the area of economic or financial crimes. (T. 252–253) He was called as a summary witness by the State regarding the interest lost by Mrs. Garcia on the money which petitioner had in his money market account. (T. 253–264) However, the State withdrew him as a witness after the court pointed out that the State had not given timely written notice that Mr. Gietzen would be a witness, and his testimony would involve hearsay. (T. 267–268)

The next day, the State recalled Mr. Gietzen as a witness. (T. 542) Mr. Gietzen testified that he was the case agent assigned to investigate petitioner's case and

---

**6.** The Eleventh Circuit later determined in a habeas corpus proceeding that the re-prosecution of Mars violated his double jeopardy rights. *See Mars v. Mounts*, 895 F.2d 1348 (11th Cir. 1990) (holding that double jeopardy barred the subsequent prosecution of defendant for second degree murder of a victim after he was acquitted of first degree murder of the same victim, where the only difference between the two prosecutions was the hour at which the crime allegedly occurred.)

that his investigation did not reveal why Mrs. Garcia's $20,000 check had been sent by Mr. Snow, the president of Accredited, back to petitioner. (T. 543–544)

During closing arguments, the prosecutor argued:

The judge granted the order setting aside the final judgment on April 2nd. Wanda Owens, the Clerk of Court testified, and you can see a handwritten notation on the bottom of that order that certified copies were mailed out in April. The State has charged that the crime occurred on and after April 10th, allowing two days for mailing....

. . . .

... There's an order of Judge Coe ordering that that money be forfeited to the Clerk of the Court. It certainly never belonged to Mr. Cueto. He's holding it as a fiduciary, as an agent, but between the first order of Judge Coe (ordering that the bond be forfeited) and the final order (setting aside the bond forfeiture) it's not legally clearly Mrs. Garcia's. After his order and certainly after the defendant got notice of his order it is clearly then hers. This was that period and he had an obligation to return it, an obligation he acknowledges, but he said he couldn't find her.

(T. 607–608)

Petitioner was convicted and filed an appeal, raising the double jeopardy issue, among other issues. The Second District Court of Appeal issued a *per curiam* affirmance on August 10, 1990, 569 So.2d 448. Petitioner also filed a motion for post-conviction relief raising the same ground. The motion was denied on December 5, 1990. (Dkt. 7, Composite Ex. B)

## II

The Fifth Amendment to the Constitution of the United States provides that a person shall not "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Courts have applied double jeopardy protection to three types of situations: (1) successive prosecution for the same offense after acquittal, (2) successive prosecution of the same offense after conviction and (3) multiple punishments for the same offense. *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990), *citing, North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The scope of double jeopardy protection is not susceptible to rigid or mechanical rules of interpretation. *Serfass v. United States*, 420 U.S. 377, 390, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975).

The double jeopardy clause attaches special weight to judgments of acquittal, whether rendered by jury or directed by the trial judge; a reversal based on insufficiency of the evidence has the same effect because it means that no rational fact finder could have voted to convict the defendant. *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).

■ A judgment by the trial court that the evidence is insufficient to sustain a guilty verdict constitutes an acquittal, and the double jeopardy clause bars retrial. *See United States v. Torkington*, 874 F.2d 1441, 1444 (11th Cir.1989). The issue is whether the court's ruling "actually represents a resolution of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977).

■ The purpose of barring multiple prosecutions for the same offense is to prevent the state, with all its resources and power, from subjecting the defendant to the embarrassment, expense and ordeal of another trial and compelling him to live in a continuous state of anxiety and insecurity. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). Multiple prosecutions also increase the risk of erroneous conviction by allowing the state the opportunity to perfect its presentation of evidence and hone its trial strategies through successive attempts at prosecution. *Tibbs*, 457 U.S. at 41, 102 S.Ct. at 2217.

Prior to 1990, the Supreme Court resolved double jeopardy claims arising in the context of successive prosecutions by appli-

cation of the *Blockburger* rule to determine whether the offense charged in the subsequent prosecution "requires proof of a fact which the other does not". *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). However, in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court announced a "same conduct" test as a second tier of review in resolving double jeopardy claims arising in the context of successive prosecutions, if a subsequent prosecution is not barred by the *Blockburger* test.[7]

The Court stated the traditional *Blockburger* test should be applied first to determine whether a successive prosecution is barred by double jeopardy. *Grady*, 110 S.Ct. at 2090. However, the Court noted that *Blockburger* was developed "in the context of multiple punishments imposed in a single prosecution." *Id.* at 2090–2091 (citation omitted). The Court stated that successive prosecutions "raise concerns that extend beyond merely the possibility of an enhanced sentence." *Id.* at 2091.

In *Grady*, the Court held that a subsequent prosecution is barred by double jeopardy if "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct for which the defendant has already been prosecuted." *Id.* The Court noted that the critical inquiry is what conduct the prosecution will prove, not what evidence the prosecution would introduce to prove the conduct. However, the Court stated the prosecution cannot avoid the double jeopardy clause merely by altering in successive prosecutions the evidence offered to prove the same conduct. *Id.* at 2093.

In *Grady*, the defendant killed the driver of an oncoming vehicle when the defendant drove his car across the center line of a highway while intoxicated. The defendant was initially charged and convicted of driving while intoxicated and failing to keep right of the median, both misdemeanors. The prosecution later indicted him for

homicide and assault charges. In a bill of particulars for the subsequent prosecution, the State indicated it would establish the defendant's guilt by proving his intoxication at the time of the accident, his failure to keep to the right of the median and the fact that he was driving too fast for the weather conditions. *Grady*, 110 S.Ct. at 2087–2089.

Applying the same conduct test to the facts of the case, the Court held that the second prosecution for vehicular homicide was prohibited on double jeopardy grounds because the prosecution intended to prove conduct for which the defendant had already been prosecuted—driving while intoxicated and failing to keep right of the median—to establish an essential element of the homicide and assault charges. *Id.* at 2094.

### III

■ The petitioner in a habeas case bears the burden of establishing his right to relief by a preponderance of the evidence. *Delap v. Dugger*, 890 F.2d 285 (11th Cir.1989), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990). Petitioner has met his burden in this case.

Petitioner states that his double jeopardy rights were violated because both trials involved the same offense, the same victim, Mrs. Garcia, and the same funds, the $20,-000. Additionally, petitioner argues that both prosecutions involved the same conduct, although the dates of the offense differ in the informations.

■ Respondent states petitioner was tried twice for different conduct "that incidentally involved two different dates, but that necessarily involved proof of facts and conduct different from the first prosecution." (Dkt. 4) Respondent contends that Cueto II involved proof that petitioner was not entitled to keep the $20,000 after the circuit court judge rescinded his order estreating the bond, while Cueto I relied solely on the single act of petitioner's deposit

---

7. *Grady* was decided on May 29, 1990. Petitioner's conviction became final on August 10, 1990. It is therefore appropriate to apply *Grady* on collateral review. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

of the money into his personal business account. The record does not support respondent's claim, however.

Although *Blockburger* has typically been applied to offenses prosecuted under different statutes, *Grady* holds that the *Blockburger* analysis must first be applied to determine whether any successive prosecution violates double jeopardy. *Grady*, 110 S.Ct. at 2090. The *Grady* Court described the *Blockburger* test as follows:

"If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred." *Id.* at 2090.

The *Blockburger* test "calls for comparison of the statutorily-prescribed elements of the offenses, not the constituent facts either as alleged or proven." *United States v. Marrero*, 904 F.2d 251, 259 (5th Cir.1990) (citation omitted). Despite *Grady*'s pronouncement that the *Blockburger* rule applies to all successive prosecutions, it is simply unworkable when applied to successive prosecutions of the same statutory offense. Applied here, the *Blockburger* test would establish petitioner's double jeopardy claim because the statutory elements of the two grand theft offenses are identical although the dates of the offenses differ. However, strict application of the *Blockburger* rule would lead to unfair results where clearly separate crimes are successively prosecuted under the same statute. For example, a defendant who commits a series of bank robberies at different times and is prosecuted successively could establish a double jeopardy violation under *Blockburger* when, in fact, separate offenses were committed.

In this case, however, the *Blockburger* double jeopardy analysis is not dispositive because the second prosecution is also barred under the *Grady* "same conduct" test.

*Grady* bars a subsequent prosecution if the government will prove conduct for which the defendant has already been prosecuted to establish an essential element of the offense. *Grady*, 110 S.Ct. at 2093.

The essential elements of the offense of grand theft under Florida law are the generic prohibited conduct set forth in Florida Statute Section 812.014(1), along with the value of the property as set forth in either subsections 812.014(2)(a) or (b). *J.C.B. v. State*, 512 So.2d 1073, 1075 (Fla. 1st DCA1987), *review denied*, 520 So.2d 586 (Fla.1988).

Section 812.014(1) states:

A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently: (a) deprive the other person of a right to the property or benefit therefrom, (b) appropriate the property to his own use or to the use of any person not entitled thereto.

Fla.Stat. § 812.014(1).

In both Cueto I and Cueto II, the Government relied on the same conduct to show that petitioner had knowingly appropriated to his own use the $20,000 which Mrs. Garcia had posted to comply with the bail forfeiture order.

The record in both trials demonstrates that petitioner deposited the $20,000 into his personal bank account on July 8, 1985, as evidenced by the testimony of Michael Pupello, the custodian of Key Bank. Most importantly, the trial transcript in Cueto I shows that the prosecution for grand theft was also based upon petitioner's conduct of failing to return the $20,000 to Violeta Garcia after Judge Coe ordered that the bond forfeiture be set aside.

During opening statements, in Cueto I, the prosecutor told the jury:

... (W)e chose the day for our information in this case of March 25, 1986 that Mr. Cueto had an absolute obligation to return the money, the twenty thousand to Violeta Garcia, and he didn't do so.

Violeta Garcia was unaware she's entitled to have that money back, and Mr. Cueto just took advantage of the situation....

(T. 23) The trial judge even noted that the State's theory of prosecution was that petitioner should have returned the money

when Judge Coe entered his order in open court on March 24th. (T. 285)

The trial transcript shows that Judge Coe testified in Cueto I that he entered the order setting aside the bond forfeiture in open court on March 24, 1986 and that petitioner had an obligation to return the money after this order on March 24th.

Under the test set forth in *Grady*, petitioner was tried for the same conduct in both trials: intentionally depriving Mrs. Garcia of her money after the judge entered an order setting aside the bond forfeiture and obligating petitioner to return the money to her. Although respondent contends that Judge Coe's order was an "intervening variable" which permitted the second prosecution, the record shows that Judge Coe's order was neither intervening in time, nor did it change the conduct for which petitioner was prosecuted in Cueto II.

Petitioner states both trials involved the same conduct of conversion of the funds through deposit of the money into petitioner's personal business account. Petitioner claims the State merely changed the dates of the offense in the informations from March 25th to "April 10, 1986 and continuously thereafter" in an effort to avoid a double jeopardy challenge.

Petitioner relies upon *Mars v. Mounts*, 895 F.2d 1348 (11th Cir.1990) for his claim that the State may not circumvent the double jeopardy clause merely by changing the date of the alleged offense.[8] In *Mars*, the Eleventh Circuit held that double jeopardy barred prosecution for the second degree murder of a victim after the petitioner in that case had been previously acquitted of first degree murder of the same victim. *Id.* at 1360. In the first prosecution, the State had filed a bill of particulars alleging the crime had been committed between 5:00 P.M. on January 29, 1983 and 12:59 A.M. on January 30, 1983. At trial, the evidence showed the murder was committed after that time.

After the defendant was acquitted, the State filed a new information charging petitioner with second degree murder and alleged in a bill of particulars that the crime had been committed between 1:00 A.M. January 30, 1983 and 1:00 A.M. January 31, 1983. The defendant was convicted at the second trial.

The Florida Supreme Court upheld the conviction in *Mars*, relying on Florida's variance theory for determining whether successive prosecutions involve the same offense. This test requires that the sufficiency of the allegations in the second information be compared with the conviction of the offense charged in the first information. "If the facts alleged in the second information, taken as true, would have supported a conviction of the offense charged in the prior information, the offenses are the same and the second prosecution is barred." *Mars*, 498 So.2d at 404.

The court held that the facts alleged in the second indictment, that petitioner had murdered the decedent between the hours of 1:00 A.M. on January 30th and 1:00 A.M. on January 31st, would not have supported a conviction on the first indictment alleging that he had murdered decedent between the hours of 5:00 P.M. on January 29th and 12:59 A.M. on January 30th. *Id.* at 404. Therefore, double jeopardy did not preclude the second prosecution.

The Eleventh Circuit disagreed, holding that the second prosecution violated the guarantee against double jeopardy. The court noted that the Florida Supreme Court had departed radically from its prior interpretations of the variance theory in holding that the time variance permitted the second prosecution, and the court stated that double jeopardy barred successive prosecutions which varied only in the time periods alleged in their respective bills of particulars. *Mars*, 895 F.2d at 1357–1358.

In petitioner's case, the trial judge denied the motion to dismiss on double jeopardy grounds in Cueto II based upon reasoning used in the state's holding in the *Mars*

---

**8.** Although *Mars* was decided before *Grady,* the decision in *Mars* is consistent with the same

conduct test set forth in *Grady.*

case. (T. 22) The Eleventh Circuit has expressly rejected the argument that merely varying the dates of the indictment or information withstands double jeopardy scrutiny. *Id.* at 1358.

There is no reasonable basis for distinguishing *Mars* from the facts of this case. In both cases, the prosecution tried the defendant for an act committed at a certain time. When the defendant was acquitted because the evidence tended to show that the alleged act was actually committed at a later time, the prosecution changed the time of the alleged act to conform with the evidence and tried defendant again for the exact same conduct.

Although the trial judge distinguished between the effects of Judge Coe's March 24, 1986 order and his written order of April 2, 1986 with respect to the issue of actual legal ownership of the property, this distinction is not significant for purposes of determining whether petitioner was prosecuted for the same conduct under *Grady.*[9] Petitioner was prosecuted in both trials for the conduct of intentionally failing to return the $20,000 after an order setting aside the bond estreature was entered. The fact that the State might have mistakenly concluded that the order setting aside the bond estreature was effective on March 24th, or picked the wrong order date for its proof of petitioner's conduct, does not change the character of the conduct for which petitioner was tried.

The State bears the risk of its own errors or mistakes at trial. *Mars,* 895 F.2d at 1359, *citing, Addington v. Texas,* 441 U.S. 418, 423–24, 99 S.Ct. 1804, 1808, 60 L.Ed.2d

323 (1979). As the Eleventh Circuit stated in *Mars:*

> One of the central objectives of the double jeopardy prohibition against successive trials is to prevent the state, with its unlimited resources, from using the first trial in the appellate process to pinpoint the inadequacies of its case. The double jeopardy clause forbids a second trial for the purpose of affording the prosecution "another opportunity to supply evidence that it failed to muster in the first trial."

*Mars,* 895 F.2d at 1359 (citation omitted).

Respondent has cited *O'Malley v. Mounts,* 16 F.L.W. D1558 (Fla. 4th DCA June 12, 1991) for the rule that grand theft is not a continuing offense under Florida law and that petitioner could be prosecuted in Cueto II for keeping the $20,000 on a different date.[10] Regardless of whether grand theft is viewed as a continuing offense or a crime which is committed on a specific date, the fact remains that petitioner was tried in both cases for his conduct of intentionally not returning the money after Judge Coe's order setting aside the bond estreature.

Merely alleging new dates for the same conduct does not comply with the guarantee against double jeopardy as interpreted in *Grady* or *Mars.* The Magistrate Judge, therefore, recommends that the petition be granted.

### Conclusion

■ Petitioner has established his right to habeas relief on his double jeopardy claim. The only issue remaining is what type of relief is appropriate. Because peti-

---

9. This distinction would be important in determining whether the prosecution in Cueto II violated petitioner's double jeopardy rights under *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel doctrine is component of Double Jeopardy Clause). However, because the trial court's judgment of acquittal necessarily determined only the issues of Mrs. Garcia's ownership of the $20,000 and petitioner's criminal intent on March 25, 1986, it did not foreclose, on collateral estoppel grounds, the second prosecution alleging that petitioner committed grand theft on a later date. *See generally, United States v. Irvin,* 787 F.2d 1506, 1515 (11th Cir.1986) (collateral estoppel

bars re-litigation of only those facts necessarily determined in defendant's favor at former trial).

10. In *O'Malley,* the Florida appellate court ruled that certain grand theft charges had been filed beyond the three-year state statute of limitations for such offenses and rejected the state's argument that Fla.Stat. § 812.014 is a continuing offense statute. A substituted opinion on September 11, 1991 also holds that grand theft is not a continuing offense in Florida. However, this opinion is not final until the time expires to file a rehearing motion and, if filed, determined. *See O'Malley v. Mounts,* 590 So.2d 437 (Fla. 4th DCA 1991).

tioner is on probation, the usual habeas remedy of releasing him from custody unless he is afforded a new trial, *see e.g. Potts v. Kemp*, 814 F.2d 1512, 1516 (11th Cir.1987), *cert. denied*, 493 U.S. 876, 110 S.Ct. 214, 107 L.Ed.2d 166 (1989), is inadequate. However, a court empowered to issue a writ of habeas corpus should "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Since petitioner was acquitted of the grand theft charge in Cueto I, justice requires that the record of his subsequent conviction, which was obtained in violation of his double jeopardy rights, be expunged. *See generally, Mizell v. New York*, 586 F.2d 942, 947–948 (2nd Cir.1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); *United States ex. rel. Hickey v. Jeffes*, 571 F.2d 762, 764–765 (3rd Cir.1978) (federal district court has statutory authority under 28 U.S.C. § 2244(b) to relieve petitioner of collateral consequences of unconstitutional conviction).

It is therefore RECOMMENDED:

(1) that the petition for habeas corpus relief be GRANTED; and

(2) that all records pertaining to petitioner's prosecution and conviction for grand theft in Case Number 88–11116 be expunged pursuant to Florida law.

Dated: November 4th, 1991.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).