[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2011
JOHN LEY
CLERK

No. 09-15663
Non-Argument Calendar

_____

D. C. Docket No. 09-60079-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK JAMES WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 23, 2011)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Mark James Williams was tried and convicted by a jury for possessing

cocaine with the intent to distribute, and importing it into the United States. The cocaine was found in Williams's cabin while he was a passenger on a cruise ship that was docked at Port Everglades, Florida after returning from three foreign ports of call including Mexico, Panama and Costa Rica. Before trial, Williams filed a motion to suppress, arguing that the search and seizure by the Customs and Border Patrol violated his Fourth Amendment rights because it was not a routine border search, and that, therefore, reasonable suspicion or probable cause was required to justify the search. Reviewing the district court's factual findings for clear error and in the light most favorable to the government,[1] we find *de novo* that there was reasonable suspicion for the search of Williams's cabin.

Officer Bradley testified that Costa Rica is "a source country" for narcotics and child exploitation. Williams traveled to Costa Rica alone, using his middle name, and had previously taken flights and cruises to Costa Rica. Two of Williams's prior flights to and from Costa Rica were shortly before he took cruises there, which Bradley had seen other cruise ship passengers do to arrange drug deals. Williams had a criminal history, and Bradley learned that when Williams traveled using his middle name, he was not stopped by Customs. Prior to searching Williams's cabin, Bradley had also learned that Williams declined to have his

---

[1] *See United States v. Tovar-Rico*, 61 F.3d 1529, 1534 (11th Cir. 1995).

2

room cleaned the day he came back onto the ship from Costa Rica. These circumstances demonstrate that Williams traveled to "a source country for narcotics and child exploitation" in a manner that drug traffickers had been known to use, he used the name which would allow him to pass Customs officers without being questioned about his criminal history, and he declined to have his room cleaned after returning from a drug source country. We find no error in the district court's conclusion that these seemingly innocuous acts nevertheless constituted reasonable suspicion to an officer trained in investigating the travel patterns of cruise passengers.

In any event, 19 U.S.C. § 1581 permits Customs officers "at any time [to] go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board." 19 U.S.C. § 1581(a). Although reasonable suspicion may be required for "highly intrusive searches of a person's body such as a strip search or an x-ray examination," we have held that the suspicionless search of a crew member's cabin on a foreign cargo ship while it was docked on the Miami River was not a violation of the Fourth Amendment. *United States v. Alfaro-Moncada*, 607 F.3d 720, 729, 732 (11th Cir. 2010).

Since Williams's cabin was searched by a Customs officer on a vessel at a port of entry – a functional equivalent of the border – the officer did not need reasonable suspicion to conduct the search, and the district court correctly denied Williams's motion to suppress.

**AFFIRMED.**