[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 10-11822 & 10-12420

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 17, 2011
JOHN LEY
CLERK

D.C. Docket Nos. 2:09-cr-00052-JES-DNF-1; 2:09-cr-00009-JES-DNF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GILBERTO RIOS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 17, 2011)

Before MARCUS, WILSON and HILL, Circuit Judges.

PER CURIAM:

Gilberto Rios appeals his convictions and 130-month total sentence for possessing with the intent to distribute methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(C), and knowingly possessing a firearm in and affecting interstate and foreign commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). On appeal, Rios argues that: (1) the district court erred in denying his motion to suppress because his consent to the initial search of his hotel room was not voluntary, the officers exceeded the scope of his consent, and the search warrant was overbroad and in violation of the Fourth Amendment's Particularity Clause; (2) the government's references at trial to Rios's refusal to consent to the warrantless search of a safe in his hotel room violated his Fourth and Fifth Amendment rights; and (3) the district court clearly erred in applying the firearms enhancement since the gun was in a locked safe. After careful review, we affirm.[1]

In reviewing the denial of a motion to suppress, we "review the district court's factual findings for clear error and its application of the law to those facts de novo." United States v. Tovar-Rico, 61 F.3d 1529, 1534 (11th Cir. 1995). "[A]ll facts are construed in the light most favorable to the prevailing party below." Id. We may consider evidence presented at both the hearing on the motion to suppress and at the

---

[1] Rios also appeals his revocation of supervised release based on these convictions. However, because Rios makes only two passing references to his revocation of supervised release in his initial brief, he has abandoned this issue. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that the appellant abandoned an issue when he only included "four passing references" to the issue in his brief).

trial. United States v. Villabona-Garnica, 63 F.3d 1051, 1056 (11th Cir. 1995). While evidentiary rulings are reviewed for abuse of discretion, United States v. Mateos, 623 F.3d 1350, 1365 (11th Cir. 2010), cert. denied, 131 S. Ct. 1540 (2011), we generally review constitutional questions de novo, United States v. O'Keefe, 461 F.3d 1338, 1346 (11th Cir. 2006). However, a constitutional error is deemed harmless if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." United States v. Gari, 572 F.3d 1352, 1362 (11th Cir. 2009), cert. denied, 130 S. Ct. 1562 (2010) (quotations omitted). Finally, we review a "district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (quotation omitted).

The relevant facts -- elicited during both the suppression hearing and trial -- are these. Detective Craig Aument testified that, in response to a call about suspicious activity related to narcotics, he and two other detectives had knocked on the door of a hotel room that was answered by Defendant Rios. Aument explained to Rios the information that he had received about suspicions of drug activity, and asked Rios if he would allow them "to search the room for narcotics." Rios initially said yes, but he quickly changed his mind. Detective Aument told Rios that they would seek a search warrant and would need to secure the room. Rios "spontaneously said, 'That

3

could take a long time,' . . . 'Well, there's nothing in here anyhow, just go ahead and look.'" Aument asked Rios if he was certain, and Rios indicated that he was and opened the door to allow the detectives into the room. Rios told Aument that he did not want the officers "to tear up the room, that [Rios was] responsible for the room."

In the room, Detective Aument found a glass smoking pipe that Rios said he had because he "used to smoke marijuana once." Aument also found a small black fireproof safe and "some small baggies that were . . . consistent with narcotics distribution." Aument asked Rios if he had the key to the safe, and Rios replied that he had lost it a few days earlier. Rios said that everything in the room belonged to him. Aument asked Rios if he could open the safe using a screwdriver or a pocket knife. Rios did not agree to that, and told Aument to get a search warrant. Rios told Aument that there were "just some papers" in the safe. Aument picked up the safe, turned it on its side, and heard "a very large clunk not consistent with papers." The object inside sounded like metal and "from the sound appeared to be fairly large." At that point, Detective Aument obtained a search warrant for the entire room.

The search warrant affidavit relayed the circumstances leading up to and surrounding the initial search, described Rios's consent to a search of the room and what Aument had found there, and requested a search warrant for the hotel room because there was probable cause to believe that controlled substances and other

related evidence would be found in the room. The search warrant authorized officers to search that room and to seize, among other things, "controlled substances[;] controlled substance residue"; equipment "used or reasonably believed to have been used to cut, weigh[,] package, store[,] and transport controlled substances"; and "firearms, firearms accessories, ammunition[,] or firearms storage devices."

Detective Aument returned to the hotel to execute the search warrant and conduct a thorough search of the room. Aument and another detective used a screwdriver to pry open the safe. Inside, Aument found a loaded firearm, a scale, a smoking pipe with residue, and two pouches or zippered bags, with "a number of individually bagged baggies" later confirmed to contain methamphetamine.

At trial, the issue of Rios's refusal to consent to open the safe came up several times. First, during the redirect portion of Detective Aument's testimony, Aument testified that after Rios told Aument that he had lost the key to the safe, Aument asked him if he could pry it open, and Rios told Aument that he would "need to get that search warrant." Then, in closing argument, the government argued that "[t]he most telling words" of the trial were, "[n]ow you're going to have to get a search warrant." The government claimed that Rios allowed the police to search the room because he did not want them to get a search warrant and find the contents of the safe, and that by requiring the officers to get a search warrant, in addition to saying that everything

5

in the room belonged to him, Rios showed that he possessed the methamphetamine and the firearm. Finally, in closing argument rebuttal, the government argued that Rios knew that if the police got a search warrant, he would be in trouble.

Turning to Rios's claims, we first are unpersuaded that the district court erred in denying his motion to suppress. Consent to a warrantless search is voluntary if it is "the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). The government bears the burden of proving that consent was voluntary. United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984). The totality of the circumstances must be considered when reviewing the voluntariness of consent. Id. Although no one factor is dispositive, we consider factors such as the

> voluntariness of the defendant's custodial status, the presence of [express or implied] coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

Id. (quotation omitted).

We must also consider the totality of the circumstances when determining "whether there were any limitations placed on the consent given and whether the search conformed to those limitations." United States v. Blake, 888 F.2d 795, 798

6

(11th Cir. 1989). The government bears the burden of showing that its search was within the scope of the consent. Id. at 800. "When an individual gives a general statement of consent without express limitations," the bounds of the search are "constrained by the bounds of reasonableness" based on "what the parties knew at the time to be the object of the search." United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992) (quotation omitted).

The Fourth Amendment requires that there be probable cause to obtain a warrant and that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006) (quotation omitted). The description must allow an officer, "with reasonable effort[, to] ascertain and identify the place intended." United States v. Ellis, 971 F.2d 701, 703 (11th Cir. 1992) (quotation omitted). Furthermore,

> [a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found . . . . Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

7

United States v. Ross, 456 U.S. 798, 820-21 (1982) (footnote omitted). "[A] warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search." United States v. Jackson, 120 F.3d 1226, 1228-29 (11th Cir. 1997).

On the record before us, the district court did not err in denying Rios's motion to suppress. As an initial matter, Rios voluntarily consented to the initial search of his hotel room, and this consent, as the totality of the circumstances shows, was "essentially [a] free and unconstrained choice." Garcia, 890 F.2d at 360. For starters, Rios was not in custody. Chemaly, 741 F.2d at 1352. Although Rios did not cooperate with the officers by immediately opening the hotel room door and identifying himself as he was asked to do, once he decided to consent to the search, he opened the door to allow the officers into the room. See id. The evidence also showed that Rios was aware of his right to refuse to consent to the search because he twice exercised that right -- Rios originally refused to consent to the search, and he withdrew his consent to search once the officers asked to open the safe. See id.

In addition, the officers did not coerce Rios into consenting to the search. See id. Rather, Detective Aument testified that after Rios consented, he asked Rios if he was certain that he wanted to consent, and Rios stated that he was. Until that point, Rios had the latch on the door, but after he consented to the search, he opened the

8

door to allow the officers into the room. Although Aument told Rios that if he did not consent, the officers would seek a search warrant and secure the room, there is no evidence that this statement rose to the level of coercion. Indeed, in Garcia, we held that the consent was voluntary where the defendant consented after being arrested in the presence of fourteen agents; the agents conducted a security sweep of the defendant's home; the agents refused to accept the defendant's consent to a limited search; and the agents told the defendant that if he refused to consent to the search, they would apply for a search warrant and search his home. 890 F.2d at 360-61. And, unlike the officers in Tovar-Rico, who conducted a protective sweep of every room with their guns drawn before asking for consent to search, the officers in this case merely stated, from outside of the hotel room, that if Rios did not consent, they would seek a search warrant and secure the room. 61 F.3d at 1535. There was no evidence here that the officers had their guns drawn, that they performed a protective sweep before asking for consent, or that they threatened Rios in any manner.

Nor did the officers' search of the hotel room exceed the scope of Rios's consent. The only limitation Rios placed on his consent was that he did not want the officers "to tear up the room, [because he was] responsible for the room." No evidence showed that the officers in any way damaged the hotel room. Whether Rios stated that the officers could "search" his room or that they could "check" his room,

9

a reasonable police officer would have believed that Rios was allowing him to search for narcotics inside the drawers, luggage, and other containers. See Martinez, 949 F.2d at 1119. Rios knew that the officers were at his room because of suspicions regarding drug activity, and Aument specifically asked if Rios would allow the officers "to search the room for narcotics." Because both Rios and the officers knew that the search was for narcotics, Aument reasonably construed Rios's consent "as permission to search any compartment or container within the [room] where narcotics [could have been] found." Id.

Moreover, the search warrant was supported by probable cause. In the search warrant affidavit, Aument described the glass marijuana pipe, packs of small baggies, cell phones, laptop computers, and the safe that he found in his initial search of the hotel room. The affidavit also described the "clunking" noise that Aument heard when he shook the safe and Rios's statements that he had lost the key to the safe and that Aument would need a search warrant to open the safe. Thus, the totality of the circumstances, as Aument described them in the search warrant affidavit, supported the conclusion that there was a fair probability of finding contraband or evidence in the hotel room. Martinelli, 454 F.3d at 1307.

Additionally, the search warrant itself described the location of the hotel and specific directions to the room to be searched, including the room number. It

authorized officers to search that room and to seize, among other things, "controlled substances[;] controlled substance residue"; equipment "used or reasonably believed to have been used to cut, weigh[,] package, store[,] and transport controlled substances"; and "firearms, firearms accessories, ammunition[,] or firearms storage devices." Therefore, the warrant itself sufficiently described the place to be searched, and sufficiently described the things to be seized. See U.S. Const. amend. IV. And, because this was a "lawful search of fixed premises" for controlled substances and firearms, the officers had the authority to open the locked safe. Ross, 456 U.S. at 820-21; see also Jackson, 120 F.3d at 1228-29. Accordingly, the district court did not err in denying Rios's motion to suppress.

We also reject Rios's argument that his Fourth and Fifth Amendment rights were violated when the government commented at trial on his refusal to consent to the search of the safe found in the hotel room. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Fourth Amendment protection is available when a defendant (1) has a subjective expectation of privacy, and (2) society recognizes that expectation of privacy as reasonable. United States v. Whaley, 779 F.2d 585, 590 (11th Cir. 1986). The Fifth Amendment provides protection against self-incrimination. U.S. Const. amend. V. While "[v]olunteered statements . . . are not barred by the Fifth Amendment" and are

admissible, <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966), the Fifth Amendment prohibits the government from commenting on a defendant's refusal to testify because such a comment "is a penalty imposed by courts for exercising a constitutional privilege." <u>Griffin v. California</u>, 380 U.S. 609, 614 (1965). The government is also restricted in the comments it may make regarding a defendant's invocation of his right to remain silent after being arrested. <u>See</u> <u>Doyle v. Ohio</u>, 426 U.S. 610, 611 (1976) (holding that the government's use of a defendant's post-arrest silence to impeach the defendant's trial testimony violated the defendant's due process rights).

We have no case law that squarely answers the question before us -- whether it is a violation of the Fourth or Fifth Amendments for the government to comment at trial on a defendant's refusal to consent to a warrantless search.[2] But even if we were to assume, <u>arguendo</u>, that it was improper for the government to comment at trial on Rios's refusal to consent to the search of the safe, we need not reach the

---

[2] Moreover, our sister circuits are split on the issue. The Third and Ninth Circuits have both explicitly held that it is improper for a prosecutor to comment on a defendant's refusal to consent. <u>United States v. Thame</u>, 846 F.2d 200 (3d Cir. 1988); <u>United States v. Prescott</u>, 581 F.2d 1343 (9th Cir. 1978). The Fifth and Seventh Circuits have either assumed that such a comment would be improper or held that such a comment "may" have been improper, but ultimately found the error harmless. <u>United States v. Runyan</u>, 290 F.3d 223, 249 (5th Cir. 2002); <u>United States v. Moreno</u>, 233 F.3d 937, 941 (7th Cir. 2000). The Tenth Circuit, parsing the issue more finely, noted "that asking a jury to draw adverse inferences from" a defendant's refusal to consent to a search "may be impermissible <u>if</u> the testimony is not admitted as a fair response to a claim by the defendant or for some other proper purpose," <u>United States v. Dozal</u>, 173 F.3d 787, 794 (10th Cir. 1999) (emphasis added), while the Fourth Circuit has found this kind of comment admissible to respond to a defendant's claim that the police planted evidence. <u>United States v. McNatt</u>, 931 F.2d 251, 257-58 (4th Cir. 1991).

question, because the government has shown that the error, if any, was harmless beyond a reasonable doubt. Gari, 572 F.3d at 1362.

As the record shows, Detective Aument testified that while he was searching the room, Rios indicated that everything in the hotel room belonged to him (even though there were some items of women's clothing found in the room), and indeed, twice exercised his right to refuse to consent to the search -- first of the hotel room, and later of the safe. Aument found a safe in one of the duffel bags in the room. The safe was locked, and Rios told Aument that he had lost the key to the safe a few days earlier, and that Aument would only find papers in the safe. In other words, Rios never disclaimed ownership of the safe to Aument; rather, he claimed to own it (along with everything else in the room), to know its contents, and to have recently lost its key -- which, combined together, provides overwhelming evidence that Rios treated the safe as his, and had dominion and control over it. As a result, there was no reversible error here because even without Rios's statement that Aument would have to get a search warrant, the rest of the evidence introduced at trial makes it "appear[] beyond a reasonable doubt" that Rios had possessed the safe and its contents, and

13

thus that "the error complained of did not contribute to the verdict obtained." Id. (quotation omitted).[3]

Finally, we find no merit in Rios's claim that the district court erroneously applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because the firearm was found in a locked safe to which Rios did not have the key. "Pursuant to U.S.S.G. § 2D1.1(b)(1), if a defendant possessed a dangerous weapon during a drug-trafficking offense, his offense level should be increased by two levels." United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001). The government has the burden to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence. United State v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). If the government successfully meets its initial burden, the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was "clearly improbable." Id. In Pham, we held that the district court did not clearly err in finding that an unloaded firearm "found in a [locked] safe containing marijuana and drug paraphernalia" was "possessed during conduct relevant to the offense of conviction." 463 F.3d at 1241, 1246.

_____

[3] Moreover, Rios's refusal to consent to the search of the safe was not introduced at trial until re-direct examination, after Rios's cross-examination of Aument, in which Rios's questions suggested that other people could have owned the safe. See Dozal, 173 F.3d at 794 (holding that it was not an abuse of discretion to admit the defendant's statements refusing consent to search because they were introduced "for the proper purpose of establishing dominion and control over the premises where a large part of the cocaine was found").

The district court did not clearly err in applying the § 2D1.1(b)(1) firearms enhancement in this case. The evidence at Rios's trial showed that the loaded firearm was found in the same safe as the methamphetamine; a scale; a smoking pipe "commonly used for smoking, or ingesting, methamphetamine"; baggies; and rubber bands. The burden then shifted to Rios to show that a connection between the firearm and the drug trafficking offense was "clearly improbable." Hall, 46 F.3d at 63. The only evidence that Rios presented to show that the connection between the loaded firearm and the drug trafficking offense was clearly improbable was the fact that the safe was locked and that Rios did not have the key to the safe. But we rejected a similar argument in Pham, 463 F.3d at 1241, 1246. Furthermore, the record belies Rios's claim that the gun was inaccessible. Although Rios did not have the key to the safe, Aument testified that the safe "was very simple to pry open" using a screwdriver. Therefore, the district court did not clearly err in applying the § 2D1.1(b)(1) sentencing enhancement. Accordingly, we affirm.

**AFFIRMED.**