[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14200
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:11-cr-00007-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLOYD SCOTT MOONEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 23, 2012)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Floyd Scott Mooney appeals his conviction for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the district court erroneously denied his motion to suppress. For the reasons set forth below, we affirm Mooney's conviction.

I.

On October 24, 2010, Mooney and his then-wife, Jessica Coleman, had an argument. Coleman took their son to her father's house. Mooney also went to Coleman's father's house, and he asked Coleman to return to their marital home that night. She refused, and Mooney left with their son. Coleman called the police because she feared for her son's safety. Officers Jason Land and George Kichler responded to the call. While speaking with Coleman, the officers learned that Mooney had firearms hidden in the bathroom of his house. Coleman agreed to show the officers the firearms, and the officers, Coleman, and Coleman's father proceeded to Mooney's house. Once at Mooney's house, Coleman showed Land and Kichler the firearms.

A federal grand jury later indicted Mooney for possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Mooney filed a motion to suppress evidence, arguing that no exception to the warrant requirement justified the warrantless search of his house. He argued that Coleman did not have the authority to consent to the search. The government responded that

Coleman had common authority over the house, which meant that her consent to the search was valid.

At the suppression hearing, Land testified that Coleman and Mooney were married and that Coleman had stated that she lived at Mooney's house. Coleman had not wanted to return home with Mooney the night of the search because he appeared angry and intoxicated. Coleman consented to the search, and Mooney did not refuse to allow the officers to conduct the search.

Kichler testified that he believed that Coleman and Mooney were married and that Coleman lived in Mooney's house. Coleman had referred to Mooney's house as her home. She had not told the officers that she was staying at her father's house. Rather, she told them that, due to the argument she and Mooney had, she did not want to return to Mooney's house. Kichler further testified that the officers did not speak with Mooney about searching the bathroom, nor did they seek his consent to the search. Mooney did not say anything to Kichler indicating that the officers could not search the bathroom.

Coleman testified that, the night of the search, she was planning on staying at her father's house rather than returning to the marital home because of the argument she had had with Mooney. She had originally moved out of Mooney's house, which was the marital home, in August 2010, but she moved back into the

3

house in September 2010. She had been staying in the house since September, and she had stayed there the night before the search on October 24, 2010. Mooney's guns were in his bathroom, to which Coleman had access. Her clothes were in the house, and she had personal items in the bathroom, such as her toothbrush and hair products. Her hair products were in the same closet in the bathroom where the guns were hidden. At some point after the search, Mooney tried to get Coleman not to testify against him. He told her to say that two of the firearms were hers, that she did not live at the house, and that she did not have the right to show the officers the guns.

Mooney testified that he had expressly refused to consent to the search of his house. According to Mooney, the officers responded by stating that Coleman had given them permission to conduct the search. Coleman had moved out of the house by the time of the search. She had spent the night a few times since moving out, and she brought a duffle bag of her possessions to the house. She had not spent the night before the search at his house, but she had gone over to the house early in the morning. Mooney also testified that Coleman had two guns in the house.

The government argued that Coleman had authority to consent to the search of the house and that the officers had not solicited Mooney's consent. Nor had

4

Mooney objected to the search. With the valid consent to search from one spouse, the officers did not have to seek the consent of the other spouse. Mooney argued in response that, even if Coleman had the authority to consent to the search, her consent did not override his express objection to the search.

The district court denied the motion to suppress. The court credited Coleman's and the officers' testimony over Mooney's testimony. The testimony at the hearing showed that Coleman and Mooney were married at the time of the search, Coleman moved back into the marital home in September 2010, she stayed at the house the night before the search, and she had at least some personal belongings at the house. Based on those facts, the court found that Coleman had common authority to consent to the search because she had access to and control over the house. Mooney's failure to restrict Coleman's access to the house after she left in August further supported the court's conclusion. The court credited the government's witnesses, rather than Mooney, and found that Mooney did not object to the search.

A jury found Mooney guilty of possession of a firearm or ammunition by a convicted felon. Mooney was sentenced to 60 months' imprisonment.

## II.

In reviewing a ruling on a motion to suppress, we "review the district court's

5

factual findings for clear error and its application of the law to those facts *de novo.*" *United States v. Tovar-Rico*, 61 F.3d 1529, 1534 (11th Cir. 1995). "[A]ll facts are construed in the light most favorable to the prevailing party below." *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Although officers generally may not search a home without a warrant, they may conduct a search "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006). Officers may obtain consent "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Whether the officers' validly relied upon third-party consent depends on whether the officers, "at the time of entry, reasonably believed [that the third party] possessed authority over the premises." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008). Whether an individual possessed common authority is not a question of property law, but rather depends "on mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. The government bears the burden of establishing common authority.

6

*Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990).

In *United States v. Backus*, 349 F.3d 1298 (11th Cir. 2003), we held that an estranged wife had common authority to consent to a search of her husband's home. *Id.* at 1305. Due to her husband's abuse, the wife left the home six months before consenting to its search. *Id.* at 1301, 1304. We explained that there was a difference between voluntarily abandoning a home and being forced to flee due to abuse. *Id.* at 1304. Accordingly, we upheld the search and declined "to extend to violently abusive husbands something akin to a rule of repose against the authority of their wives to consent to a search of jointly owned property." *Id.* at 1305.

The district court did not err in denying Mooney's motion to suppress. On appeal, Mooney only argues that Coleman did not have authority to consent to the search. The district court's factual findings—that Coleman had moved back into the marital home in September 2010, Coleman and Mooney were married at the time of the search, at least some of Coleman's personal property was in the house, and Coleman stayed at the house the night before the search—were not clearly erroneous, as they were supported by Coleman's and the officers' testimony at the suppression hearing. Based on those facts showing that Coleman lived at the house for the month preceding the search and that her personal belongings were at the

house, Coleman had mutual use of and access to the house. Due to her mutual use of and access to the house, Coleman had common authority to consent to the search. *See Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7.

On appeal, Mooney also makes arguments regarding: (1) the lack of evidence of Coleman's property interest in the house, (2) the significance of *Backus* to the evidence of common authority in this case, and (3) the officers' inquiry into Coleman's authority to consent to the search. First, the argument regarding a property interest is misplaced because the question of common authority does not rest on property interests. *See Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. Second, Mooney's argument regarding *Backus* also fails. It is true that, unlike the wife in *Backus*, Coleman had been living in the home for approximately one month preceding the search. Despite the factual differences distinguishing this case from *Backus*, as discussed above, we affirm the denial of the motion to suppress because Coleman had common authority to consent to the search. Finally, Mooney's argument regarding the officers' inquiry into Coleman's authority to consent to the search also fails. Based on Coleman's statements to the officers that she and Mooney were married and that she lived at the house, they reasonably believed that she had common authority to consent to the search. *See Mercer*, 541 F.3d at 1074. Based on the above, the district court correctly denied

the motion to suppress.

For the foregoing reasons, we affirm Mooney's conviction.

**AFFIRMED.**